UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| ANDREA RICHARDSON, Individually, And as Administratrix of the ESTATE OF LESLIE RICHARDSON, <br><br> Plaintiffs, <br><br> V. <br><br> ROSE TRANSPORT, INC., ET AL., <br><br> Defendants. | CIVIL ACTION NO. 5:11-317-KKC <br><br><br> **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a motion for summary judgment by the defendants Rose Transport, Inc. and XTRA Lease, LLC (DE 62) and the plaintiffs' motion for leave to file a second amended complaint (DE 64). For the following reasons, the Court will grant the motion for summary judgment and deny the motion for leave to file a second amended complaint.

## BACKGROUND

This case arises from a motor vehicle accident in September of 2008. Leslie Richardson collided with a tractor-trailer operated by Jeffrey McCormick, an employee of Rose Transport, Inc. The tractor-trailer was owned by XTRA Lease, Inc., who leased it to Rose Transport. Mr. Richardson suffered severe injuries and was treated at both the University of Kentucky Medical Center and Cardinal Hill Rehabilitation Hospital in Lexington, Kentucky. According to the plaintiffs, Mr. Richardson suffered a severe brain injury, which ultimately led to his death on October 8, 2011 by a drug overdose.

Mr. Richardson and his wife, Andrea Richardson, brought this suit on September 1, 2011. In their original complaint, they brought claims against Rose Transport and XTRA Lease, alleging counts of negligence, negligence per se, and loss of consortium. More than one year later, on September 5, 2012, the plaintiffs filed leave to amend their original complaint. (DE 29). The amended complaint joined a third defendant, Wabash National Corporation, who manufactured the trailer Mr. Richardson collided with. In addition to joining Wabash, the amended complaint added products liability claims against Wabash and XTRA Lease, along with wrongful death claims against all defendants due to the fact that Mr. Richardson died of a drug overdose on October 8, 2011. The Court granted the plaintiffs leave to amend their complaint on November 1, 2012 (DE 31), and the amended complaint was filed into the record on that same day (DE 32). Wabash was subsequently dismissed from the proceeding due to the statute of limitations. (DE 48; motion for reconsideration denied at DE 83).

The essence of the plaintiffs' claim is that the trailer's underride guard failed due to a combination of negligent maintenance and design defects. This failure caused Mr. Richardson to suffer injuries above and beyond what he would have incurred, including a brain injury, which led to a number of subsequent medical problems and his eventual death. As proof of their claims, the plaintiffs rely on an expert witness, Dr. Steven Batterman, who opines that the Wabash trailer was defectively designed.

Dr. Batterman prepared two expert reports and was deposed by the defendants on February 21, 2013. His initial report concluded that, among other things, the minimum federal safety standards for underride guards are ineffective, and that trailers relying only on those standards will not properly prevent underride in cases such as Mr. Richardson's. (DE 62-4, at 6). Significantly, Dr. Batterman notes in his report that he has not inspected the underride guard that

was attached to the Wabash trailer, nor has he reviewed its engineering designs. (DE 62-4, at 1). Rather, Dr. Batterman basis his belief on the fact that the underride guard failed in an accident where it should not have.

Dr. Batterman filed a supplemental report on July 22nd, 2013, following his review of the defendants' expert report and the deposition of two defense witnesses. (DE 62-5). The supplemental report responded to the conclusions drawn by defense expert witness William C. Cloyd, and further noted that it was his belief that XTRA Lease and Rose Transport were negligent in procuring and leasing the trailer in question. This opinion was based on his review of the deposition by two corporate representatives of the defendant companies, where they admitted to doing little research into underride guards other than to ensure that the trailers they used complied with federal safety standards. It is not clear whether Dr. Batterman is an expert qualified to speak to the appropriate standard of care for procuring and leasing trailers.

Dr. Batterman was deposed by the defendants' counsel on February 21, 2013. (DE 62-11). In his deposition, he stated that because the trailer was repaired and its damaged parts replaced, he was not able to inspect the trailer as it would have been maintained at the time of the 2008 accident. (DE 62-11, at 14, 19). He therefore admitted that he has no evidence to believe that the trailer was negligently maintained. (DE 62-11, at 20, 31). As to the products liability claim, Dr. Batterman repeated his claims that the federal minimum safety standards were inadequate and that a properly designed trailer could have prevented the underride in this case. (DE 62-11, at 19).

Importantly, Dr. Batterman discussed why he believed the underride trailer was defectively designed despite the fact the he has not reviewed any design specifications, field tests, or any other data relating specifically to the Wabash trailer at issue in this case:

3

> Q: Okay. Your report says that you haven't received and reviewed any information concerning the design and testing of the underride guard in this case. But in your opinions you say that it is defective, to a reasonable degree of engineering certainty. Question being, if you don't know how to design and test, how do you know it is defective?
>
> **A: Because it failed in an accident which should have worked.**
>
> Q: Because if the closing speeds were sufficient to -- I'm sorry -- the Delta V in this case was at a point where you feel a properly designed underride guard should have stopped it?
>
> A: That's correct.
>
> Q: And that's the basis of that opinion?
>
> A: That's correct. (DE 62-11, at 24) (emphasis added).

Thus, Dr. Batterman stated that he believes the Wabash trailer was defectively designed because the underride guard failed in a case where it should not have. According to Dr. Batteramn, it is the failure of the product that proves its defect.

Following the close of discovery, the defendants moved for summary judgment asking the Court to dismiss all counts against the remaining defendants XTRA Lease and Rose Transport on the grounds that the plaintiff has failed to provide evidence sufficient to prove any of its remaining claims. (DE 62). In response, the plaintiffs moved to file a second amended complaint, where they add an additional claim of negligence against both defendants and add Rose Transport to the products liability claim in Count V. (DE 64). The defendants objected to the plaintiffs' proposed amendments.

## DISCUSSION

As of now, only three claims against Rose Transport and XTRA Lease remain in the amended complaint: (1) a count against both defendants for negligent maintenance of the trailer; (2) a products liability claim for defective design against XTRA Lease; and (3) a wrongful death

claim against both defendants. The plaintiffs, however, contend that their complaint should be read to also assert a products liability claim against Rose Transport and a claim of negligent procurement and leasing of the trailer against both defendants. The plaintiffs request leave to file a second amended complaint that clarifies this matter. Because the Court will deny the motion for leave to file a second amended complaint, it addresses this matter first.

## I. Plaintiff's Motion for Leave to File a Second Amended Complaint

The plaintiffs move this Court for leave to file a second amended complaint, arguing that the prior deadline for amending pleadings arrived before they had the opportunity for the discovery that led to the need to modify their allegations. The second amended complaint makes two important additions. First, it adds negligence counts against XTRA Lease and Rose Transport, alleging that the companies negligently procured and leased the Wabash trailer. Second, the complaint alleges a products liability claim against Rose Transport that mirrors the claim brought against XTRA Lease in Count V. The defendants object on the grounds that the deadline for amending pleadings was October 17, 2012—more than one year earlier—and the plaintiffs did not file the second amended complaint until after the defendant moved for summary judgment following the close of discovery.

In a somewhat confusing motion, the plaintiffs contend that they could not know that the defendants negligently procured and leased the Wabash trailer until *after* they took the deposition of two corporate representatives—one from XTRA Lease and Rose Transport—but that the defendants were nonetheless on notice of these claims prior to its motion to amend. Thus, the plaintiffs argue before this Court that the defendants should have known about the additional claims added to the proposed second amended complaint before the plaintiffs' themselves knew these claims existed.

5

Additionally, the plaintiffs argue that Count V's products liability claim against XTRA Lease should be read include Rose Transport, despite the plain language to the contrary. For support, the plaintiffs argue that Rose Transport had sufficient notice of this claim because Dr. Batterman opined that *both* defendants knew or should have known that the trailer was unreasonably dangerous and the defendants share the same counsel.

None of these arguments are persuasive. The plaintiffs can amend their complaint "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2). In determining whether to allow a plaintiff to amend a complaint, courts consider elements such as "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973). As the defendants correctly note, the relevant elements in this case are undue delay in filing, repeated failure to cure deficiencies by previous amendments, and undue prejudice to the opposing party.

To begin, the plaintiffs contend that it was impossible for them to have amended their complaint before the October 17, 2012 deadline because the amendments are founded on information obtained through discovery in April and June of 2013. This does not explain, however, why the plaintiffs waited until October 18, 2013—nearly four months after completing the relevant discovery—to file the second amended complaint. In fact, the plaintiffs filed for leave to amend the complaint on exactly the same day they filed their response to the defendants' motion for summary judgment. Contrary to the plaintiffs' claims that they were merely subject to the discovery timeline, it appears much more plausible that their motion to amend was motivated by the defendants' legal arguments in its motion for summary judgment.

Considering the proceedings here in context, the plaintiffs filed a motion to amend their complaint for a *second* time more than a year after the amendment deadline passed; more than three months after discovery was completed; and only after the defendants filed a motion for summary judgment. The element of undue delay in filing weighs heavily against the plaintiffs.

Of further concern is the prejudice the defendants would face if the Court were to allow the plaintiffs to amend their complaint at this stage in the proceedings. At this point, extensive discovery has taken place that includes deposing various corporate representatives and expert witnesses for both parties. The defendants have pursued litigation strategies aimed at defending against very specific allegations made by the plaintiffs, and the plaintiffs now wish to amend their allegations more than two years after bringing their suit and more than three months after the close of discovery. These added claims require different defenses than those pursued by the defendants thus far. They may require different strategies in how the defendants craft motions or depose witnesses. At the very least, allowing the amendment would require the Court to reopen discovery so that the defendants can prepare defenses to the new claims the plaintiffs seek to add. Absent a plausible reason to explain the delay, of which the Court finds none, the plaintiffs cannot be allowed to impose this type of prejudice on the defendants at this point in the litigation. *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (denying a motion to amend when the plaintiff "delayed pursuing [the] claim until after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed").

The plaintiffs defend their motion by claiming that no undue prejudice exists because the defendants were already on notice of these additional claims, and in fact have defended themselves from them. According to the plaintiffs, the defendants should have had notice of the

additional negligence claim after the deposition of the expert witness Dr. Steven Batterman, who opined that XTRA Lease and Rose Transport negligently procured and leased the trailer in question. Similarly, the plaintiffs contend that Rose Transport should have also been on notice that it was included in the products liability claim alleged in Count V, despite the plain language of the amended complaint indicating otherwise, because Dr. Batterman opined that both XTRA Lease *and* Rose Transport should have exercised greater care in selecting the trailer. Moreover, the plaintiffs contend that because they already brought negligence and products liability claims against the defendants, they believed in good faith that they did not need to amend their complaints simply to add a different legal theory to support their cause of action.

First, the fact that an expert witness opined about a defendants' negligence does not, on its own, put the defendants on notice that the plaintiffs are pursuing claims that have not been alleged in either the original complaint or the first amended complaint. Litigants often forgo valid claims for a variety of reasons. The burden is not on the defendant to discern which claims the plaintiff *intends* to bring against it when the complaint makes clear exactly which claims are being brought. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that a plaintiff's complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests"). The plaintiffs in this case are represented by sophisticated counsel. They filed a detailed complaint and an even more detailed amended complaint. There is no reason to believe that the clearly-written complaint was incomplete or missing allegations the plaintiffs intended to bring.

Consider, for example, the counts brought in the amended complaint. Some counts are brought against both Rose Transport and XTRA Lease (Counts I and II), whereas Count V only names XTRA Lease as a wrongdoer. Some counts are brought against Wabash by itself (Counts

8

III and IV), whereas others include all three defendants (Counts VI and VII). Moreover, under the counts labeled as "Negligence" (Counts I and IV), the plaintiffs took care to allege exactly what theories of negligence they were pursuing, and by implication, what theories of negligence they were *not* pursuing. When a claim is as specific as a breach of the "duty to maintain the trailer of the tractor" (Count I, DE 32, at 3), the defendants could not reasonably be expected to interpret it so broadly as to include *any* negligence that might possibly discovered. This is a well-drafted complaint, which by its own plain language, includes neither a claim of negligent procurement against either defendant, nor a products liability claim brought against Rose Transport.

For these reasons, the Court will deny the plaintiffs' motion to amend its complaint to add these claims.

## II. Defendants' Motion for Summary Judgment

Given the above ruling that the Court will not permit the plaintiffs to file its belated second amended complaint, the Court considers the defendants' motion for summary judgment as it is written: against only those counts brought in the first amended complaint. The Court will therefore not rule on the question of negligent procurement and leasing (DE 63, at 14), as such a claim is not alleged by the plaintiffs in the amended complaint. Three claims remain, and the defendants have moved for summary judgment as to each of them: (1) a claim against XTRA Lease and Rose Transport for negligently maintaining the Wabash trailer; (2) a products liability claim against XTRA Lease because it knew or should have known the trailer was unreasonably dangerous when it leased the trailer to Rose Transport; and (3) wrongful death claims against both defendants.

Under Fed. R. Civ. P. 56, summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322-25. Once the movant meets this burden, the opposing party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *See id.* at 324 (internal quotations omitted). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

### *A. The Plaintiffs Cannot Prevail on a Theory of Negligent Maintenance as a Matter of Law*

Count I of the amended complaint alleges that XTRA Lease and Rose Transport negligently maintained the trailer and its underride guard, which resulted in the injuries and ultimate death of Leslie Richardson. In their motion for summary judgment, the defendants contend that the plaintiffs have offered no proof that the underride guard was negligently maintained, and the only proof that the plaintiffs have offered relate to the *design* of the guard and the general adequacy of federal safety regulations, rather than the maintenance of the specific trailer in question.

The plaintiffs' only evidence offered to prove Count I is the testimony of expert witness Dr. Steven Batterman, who repeatedly denies having any reason to believe that the specific trailer in question was negligently maintained at the time of the accident in 2008. Review of Dr. Batterman's report and the deposition transcript confirms this claim. The expert report prepared by Dr. Batterman focuses on the defective design of the trailer, along with his belief that federal safety regulations in this area are inadequate, but does not claim that the actual trailer in this case was negligently maintained. In fact, on at least two separate occasions Dr. Batterman confirmed that he has *no evidence* to support the claim that the trailer was negligently maintained:

> Q: Do you have any evidence that the underride guard was poorly maintained by the owner of that trailer or the user of that trailer?
>
> A: I have no evidence one way or the other. (DE 62-11, at 20).
>
> . . .
>
> Q: Okay. And based on the information that you have now, you have no evidence to suggest that this trailer underride guard was improperly maintained by the truck company or the trailer company that leased the trailer?
>
> A: Based – that's correct. Based on the evidence I have now. (DE 62-11, at 31).

In response, the plaintiffs mischaracterize the nature of Dr. Batterman's deposition testimony and falsely claim that he opined that the trailer was negligently maintained. The plaintiffs submit to the Court in their response memorandum that when specifically asked about "maintenance issues" with the way the underride guard was attached, Dr. Batterman said:

> A: Well, not really. But I just want to – well, the one thing I noticed was that there were three bolts which were attaching the uprights to the body of the trailer, but there are actually four holes. So one hole was never filled with a bolt.
>
> . . .

> Q: Any other maintenance issues, as far as they attached it?
>
> A: None that I can see. Other than, again, it was a very poor way of attaching an underride guard to a trailer." (DE 63, at 10–11).

While it is true that Dr. Batterman made these statements in his deposition, he was not referring to the trailer *as it was maintained in 2008* when the accident occurred. Rather, Dr. Batterman repeatedly notes that he did not have an opportunity to examine the 2008 trailer, and his statements about potential maintenance issues came from observing the trailer after it had been repaired nearly four years later:

> Now, when you say "this trailer," the record should be clear, it had been repaired prior to my visit and the components which were on it at the time of the accident were not made available to me. (DE 62-11, at 13).

Immediately following these statements, Dr. Batterman was asked about the trailer as it was maintained in 2008, rather than as it was maintained four years later:

> Q: Do you have any evidence that the underride guard was in a state of disrepair on the date of the accident?
>
> A: There is nothing obvious in the photos, other than it failed very early in the unrderride process, the impact process.
>
> Q: Do you have any evidence that the underride guard was poorly maintained by the owner of that trailer or the user of that trailer?
>
> A: I have no evidence one way or the other. (DE 62-11, at 20).

The only other evidence offered by the plaintiffs to support their claim of negligent maintenance is the deposition testimony of Rebecca Mahoney and Steve Porter, corporate representatives of Rose Transport and XTRA Lease, respectively. In these depositions the representatives explain how the companies inspect their trailers. The plaintiffs intend to demonstrate that these companies were negligent insofar as they should have discovered the maintenance issues during their pre-trip inspections. But without proof that the trailers were

actually in a state of disrepair, the testimony by Ms. Mahoney and Mr. Porter does not support a claim of negligence.

Because the plaintiffs have submitted no evidence that the trailer was negligently maintained, the Court will grant the defendants' motion for summary judgment as to the negligent maintenance claim in Count I of the amended complaint.

### *B. Plaintiff Cannot Prevail on a Theory of Defective Design as a Matter of Law*

In Count V of the amended complaint, the plaintiffs bring a products liability claim alleging that the trailer was in a defective condition that rendered it unreasonably dangerous and created an unreasonable risk of danger to the property and persons of other motorists. This unreasonably dangerous defect, according to the plaintiffs, proximately caused the injuries and ultimate death of Leslie Richardson. According to the amended complaint, Count V is alleged only against XTRA Lease. The plaintiffs contend that even without the second amended complaint this Court rejected above, Count V should be read to include Rose Transport.

**1. The plaintiffs did not allege a products liability claim against Rose Transport.**

The amended complaint asserts two products liability claims against the defendants. Count III asserts a defective design claim against Wabash, who has since been dismissed from the case. Count V asserts a similar claim against XTRA Lease, LLC, alleging that "XTRA Lease, LLC knew or should have known that the trailer was in a defective condition and/or unreasonably dangerous thereby creating an unreasonable risk of danger to the property and person of other motorists, including Leslie Richardson." No other products liability claims have been asserted in the amended complaint.

Despite this, the plaintiffs contend that they did in fact bring a products liability claim against Rose Transport. (DE 63, at 28). According to the plaintiffs, the defendants were on notice that

13

the products liability claim was being asserted against both of them because they share the same counsel and the plaintiffs' expert witness opined that both XTRA Lease and Rose Transport should have exercised greater due diligence in selecting a trailer. Because the defendants had notice, the argument goes, the Court should interpret Count V as alleging a claim against both defendants. The Court is not convinced.

The plaintiffs appear to misunderstand the effect of their own chronology. The amended complaint was filed on September 5, 2012, and Dr. Batterman was not deposed until July 25, 2013. Thus, the plaintiffs propose that the defendants should have interpreted Count V of the amended complaint in light of a deposition *that had not yet been taken*. Even if Dr. Batterman's deposition put Rose Transport on notice, such implied notice would not be sufficient to add a defendant to Count V, which by its plain and clear language does not include Rose Transport. Thus, and in light of the Court's above denial of the motion for leave to amend the complaint for a second time, the Court denies the plaintiffs' attempts to shoehorn Rose Transport into Count V.

**2. The plaintiffs cannot prevail on a defective design claim against XTRA Lease.**

The plaintiffs in this case cannot prevail under Kentucky law on their products liability claim against XTRA Lease, which alleges that the underride guard on the Wabash trailer was defectively designed. The problem for the plaintiffs is two-fold: First, they have failed to offer evidence establishing a genuine issue of material fact as to whether the particular Wabash trailer in question was defectively designed. Second, they have not offered any evidence that XTRA Lease knew or should have known about the alleged defect as required under K.R.S. § 411.340.

"Kentucky imposes strict liability when the 'design itself selected by the manufacturer amounted to a defective condition which was unreasonably dangerous.'" *See Stewart v. Gen. Motors Corp.*, 222 F. Supp. 2d 845, 848 (W.D. Ky. 2002) (quoting *King v. Ford Motor Co.*, 209

F.3d 886, 893 (6th Cir. 2000)). In order to prevail, "a plaintiff must prove something more than it was 'theoretically probable that a different design would have been feasible.'" *Id.* (quoting *Bush v. Michelin Tire Corp.*, 963 F. Supp. 1436, 1441 (W.D. Ky. 1996)). "[P]roof that technology existed, which if implemented would feasibly have avoided a dangerous condition, does not alone establish a defect." *Id.* (quoting *Brock v. Caterpillar, Inc.*, 94 F.3d 220, 224 (6th Cir. 1996)). XTRA Lease argues that the plaintiffs in this case cannot prevail as a matter of law because they have failed to produce a single piece of evidence demonstrating how the Wabash trailer was defectively designed. (DE 62-1, at 14).

According to the plaintiffs, such proof is in the form of expert witness Dr. Steven Batterman, who has provided two reports and was deposed by the defendants' counsel on February 21, 2013. Dr. Batterman concludes, among other things, that the minimum federal safety standards for underride guards are inadequate; that a trailer designed only to meet the minimum federal safety standards will therefore be inadequate; that designs for effective underride guards have been available for several decades; and that because it is possible to design an effective underride guard, the fact that the guard failed on the Wabash trailer is itself proof that it was defectively designed.

In evaluating a motion for summary judgment, the Court does not weigh the credibility of evidence and it reviews the evidence in the light most favorable to the non-moving party. Thus, the Court takes as true all of the claims made by Dr. Batterman, and analyzes whether the plaintiffs can prevail as a matter of law.

The problem for the plaintiffs, however, is that Dr. Batterman's opinion that the underride guard was defectively designed is based only on the fact that it failed when it shouldn't have. He admits in his report that he has not examined the actual engineering design of the Wabash trailer,

15

and was asked by the defendants' counsel how he could know the guard was defectively designed when he has never reviewed its design specifications:

> Q: Okay. Your report says that you haven't received and reviewed any information concerning the design and testing of the underride guard in this case. But in your opinions you say that it is defective, to a reasonable degree of engineering certainty. Question being, if you don't know how to design and test, how do you know it is defective?
>
> **A: Because it failed in an accident which should have worked.**
>
> Q: Because if the closing speeds were sufficient to – I'm sorry – the Delta V in this case was at a point where you feel a properly designed underride guard should have stopped it?
>
> A: That's correct.
>
> Q: And that's the basis of that opinion?
>
> A: That's correct. (DE 63, at 29–30) (emphasis added).

Thus, Dr. Batterman's opinion is that an underride guard should not have failed in a collision like Mr. Richardson's, and because it did, he can determine it had a design defect.

This proof is insufficient to sustain a design defect claim under Kentucky law. The plaintiffs here concede that the trailer was designed, at a minimum, to meet all applicable federal industry standards. In such cases, Kentucky establishes a presumption that a product is non-defective, and the burden is on the plaintiff to prove the contrary. *See* K.R.S. § 411.310. Here, the plaintiffs' evidence of a defect is the fact that the underride guard failed when it was possible to design it so that it would not fail. They have not demonstrated what exactly about the design of the Wabash underride guard was defective, and in fact their expert admits to having not examined its design specifications.

The plaintiffs rely on scientific studies that demonstrate the inadequacy of the minimum federal safety standards and provide alternate designs. While this evidence is surely relevant in

proving a feasible alternate design, it does nothing to prove that the design of the particular Wabash trailer in this case was defective. As noted by the defendants, the plaintiffs criticize the federal safety standards but offer no explanation as to where in relation to those standards the Wabash trailer falls. In order to prove a design defect, they must—at a minimum—offer evidence relating to the specific design of the trailer being disputed in this case. They have not done so, and thus cannot prevail as a matter of law.

Even if the plaintiffs could prove the existence of a design defect, their claim against XTRA Lease for defective design fails because they cannot show that XTRA Lease knew or should have known that the trailer was defectively designed. *See* K.R.S. § 411.340. "Products liability causes of action are most frequently directed against the manufacturer of the product rather than a down-the-line business entity." *West v. KKI, LLC*, 300 S.W.3d 184, 191 (Ky. Ct. App. 2008). But under Kentucky law, products liability actions against down-the-line entities, rather than the manufacturer, is sometimes appropriate. *See id.*; K.R.S. § 411.340. Kentucky's "middleman statute" provides that:

> [i]n any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, **shall not be liable to the plaintiff** for damages arising soling from the distribution or sale of such product, **unless such wholesaler, distributor or retailer,** breached an express warranty or **knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonable dangerous to the user or consumer.**

K.R.S. § 411.340. This statute acts to prevent products liability claims against non-manufacturers except in the case where the product's condition changed between the time it left

17

the manufacturer and the time a consumer received it *or* in a case where the down-the-line entity knew or should have known about the defect.

In this case, XTRA Lease is a down-the-line entity because the trailer was manufactured by Wabash and leased to Rose Transport by XTRA Lease. Deposition testimony by the plaintiffs' expert witness acknowledges that no evidence suggests the trailer underride guard manufactured by Wabash was altered by XTRA Lease. Thus, the plaintiffs must show that XTRA Lease knew or should have known that the trailer was in a defective condition unreasonably dangerous to the user or consumer.

The plaintiffs have not provided any evidence to support the claim that XTRA Lease knew or should have known the underride guard was defective, and in fact, their own expert witness explained the difficulty in acquiring this knowledge. When asked which trailer manufacturers are currently using effective underride guards, Dr. Batterman said he did not know. (DE 62-11, at 27). When asked whether you can determine which guards are effective by inspection alone, Dr. Batterman said you could not. (DE 62-11, at 27 ("I would say generally, you have to do testing. Sometimes you can see an underride guard which is braced. But, again, I would still want to do testing.")). Further, Dr. Batterman and the plaintiffs cite to no literature specifically discussing Wabash trailers and the inadequacies of their underride guards. In other words, Dr. Batterman claims the Wabash trailer is defective, but is unable to provide a single piece of information that XTRA Lease could have uncovered short of field testing the trailer after they bought it. If the Court were to find that this is sufficient to find that XTRA Lease knew or should have known about the alleged design defect, trailer consumers would be required to crash-test their merchandise.

Without evidence to support the proposition that XTRA Lease knew or should have known about the alleged defects in the Wabash trailer, the plaintiffs cannot prevail on their design defect claim. Accordingly, the Court grants the defendants' motion for summary judgment as to Count V and dismisses the claim.

*C. No Theory of Liability Supports Plaintiffs' Wrongful Death Claims*

Because the plaintiffs have not prevailed on any theory of liability, their claims for wrongful death are similarly dismissed. Although wrongful death claims are not derivative per se, they do require a showing that the death was the result of a wrongful act. *See* K.R.S. § 411.130. The plaintiffs in this case ground their claim of wrongful death on the theories of liability discussed above. (DE 32, at 8). Because they have failed as a matter of law to demonstrate they can prevail on any theory liability advanced so far, their wrongful death claim is also dismissed.

## CONCLUSION

Accordingly, and for the above-stated reasons, **IT IS HEREBY ORDERED** that

1. The defendants' motion for summary judgment (DE 62) is **GRANTED**;

2. The plaintiff's motion for leave to file a second amended complaint (DE 64) is **DENIED**;

3. The remaining pending motions (DE 73, 77, and 79) are **DENIED AS MOOT**; and

4. Judgment shall be entered contemporaneously with this Order.

Dated this 13th day of January, 2014.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY